IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ARI BANK,** <br>                  **Plaintiff,** <br><br> v. <br><br> **COMMUNITY COLLEGE OF PHILADELPHIA, VICTORIA ZELLERS, LEILA E. LAWRENCE, DEBONAIR OATES-PRIMUS AND MARY HOEFFEL,** <br>                  **Defendants.** | **CIVIL ACTION** <br><br><br><br> **NO. 22-293 #** |

## MEMORANDUM OPINION

Plaintiff Ari Bank is a white, male, tenured assistant professor at the Community College of Philadelphia ("CCP") with several mental disabilities: PTSD, clinical depression, panic and anxiety. On January 23, 2022, Plaintiff filed suit against CCP; Victoria Zellers, CCP's General Counsel; Leila Lawrence, the Director of CCP's Office of Diversity and Equity ("ODE"); Debonair Oates-Primus, a former CCP professor; and Mary Hoeffel, a current CCP professor (collectively, "Defendants"). Specifically, the Complaint asserts claims against CCP of race and sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); disability discrimination and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; race discrimination and retaliation under 42 U.S.C. § 1981 ("Section 1981");[1] race, sex, and disability discrimination and retaliation under the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951, *et seq.* ("PHRA"); and, hostile work environment based on race, sex, and disability. He is suing Zellers and Lawrence for race

---

[1] Bank's claims against CCP under Section 1981 will be dismissed with prejudice because he conceded in his opposition brief that CCP is a public employer, and in the Third Circuit, Section 1981 provides no cause of action against state governmental units. *McGovern v. City of Phila.*, 554 F.3d 114, 120-21 (3d Cir. 2009).

1

discrimination and retaliation under Section 1981; race, sex, and disability retaliation under the PHRA; and aiding and abetting race, sex, and disability discrimination and retaliation under the PHRA. Finally, Bank brings suit against Oates-Primus and Hoeffel for defamation and false light invasion of privacy under Pennsylvania common law. Defendants filed a Motion to Dismiss all claims. For the reasons that follow, Defendant's Motion will be granted.

I. **FACTUAL BACKGROUND**[2]

Bank's claims are based on events that began in the summer of 2020. In June, he emailed several colleagues, including Oates-Primus, offering to fund an annual scholarship to be awarded to a CCP Black Studies student. He sought his colleagues' help turning the award into reality. On July 15, 2020, Oates-Primus replied that, in addition to being over-extended on its own projects, her advisory board had qualms about working with Bank "because of past micro-aggressive and macro-aggressive interactions you've had with several Black faculty on our board." Bank replied that he was unaware of offending anyone, but hoped for a "heart to heart" with anyone feeling aggrieved. The next day, Professor Elisa McCool replied all on behalf of herself and Defendant Hoeffel, criticizing Bank's response.

Bank reported these emails to "various CCP officials" and to Leila Lawrence at the ODE. He told Lawrence about his disabilities and asked her if any complaint had ever been made against him to ODE; none had. Lawrence told Bank that he was being discriminated against and

---

[2] The facts are assumed to be true at this stage, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and are taken from the Complaint and exhibits to the Complaint. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (at the motion to dismiss stage, consideration is given only to "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record"). The Court also relied on two emails in Exhibit 1 to Defendants' Motion (those sent to Bank on July 16 and July 15), as well as Exhibits 3 and 4 to Defendants' Motion (each in its entirety), because Bank's claims are based on those documents. *Id*. ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). Bank did not dispute Defendants' assertion that the Court may properly rely on these exhibits.

that ODE would investigate.

The same day, Bank's attorney wrote to Oates-Primus and McCool, informing them that their emails were defamatory. Zellers, CCP's General Counsel, responded to Bank's attorney on the professors' behalf, contending that their conduct likely constituted protected activity under anti-discrimination law and CCP's policies, and warning that Bank could be seen as engaging in unlawful retaliation by threatening them with litigation. She noted that Oates-Primus's complaint had been referred for investigation and that Bank's complaint would also be investigated.

On August 26, 2020, Lawrence informed Bank that he was under investigation by ODE for the acts of micro-aggression and macro-aggression alleged against him by Oates-Primus. CCP did not investigate Bank's complaint. Bank took an approved medical leave of absence for the spring semester of 2021 because these events had affected his PTSD and clinical depression.

In late January 2021, a second series of confrontations took place. On January 26, Bank emailed over a dozen colleagues, informing them that the ODE had found the allegations against him to be unsubstantiated, but that the investigation had exacerbated his mental health conditions. Several faculty members, including Hoeffel and Oates-Primus, replied to all recipients, sharing their negative reactions to Bank's email. On January 29, Hoeffel emailed approximately 100 CCP colleagues, recounting the events of the previous summer, and voicing support for Oates-Primus and criticizing Bank.

That same day, Bank reported to Lawrence, CCP President Donald Generals, and CCP VP Samuel Hirsch that he was enduring a hostile work environment. Only Hirsch responded, advising Bank to go to the hospital if he was feeling unwell. On February 1 and 2, Bank's attorney contacted CCP's outside counsel, Zellers, and Lawrence, requesting that they stop the

"discriminatory harassment and hostility and bullying." Bank filed a formal complaint about Hoeffel with the ODE on February 4, which ODE did not investigate.

## II. LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At this stage, the Court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). Legal conclusions are disregarded and well-pleaded facts are taken as true. *Id.* at 210-11. All reasonable inferences are drawn in the plaintiff's favor. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021).

## III. DISCUSSION

### A. Common Law Claims

#### i. *Defamation*

Bank's defamation claims are based on the reaction of Oates-Primus and Hoeffel to his January 2021 email sharing the outcome of the ODE's investigation.[3] To state a claim for defamation, a plaintiff must show "[t]he defamatory character of the communication." 42 Pa.

---

[3] After Defendants pointed out that the applicable statute of limitations, 42 Pa. C.S. § 5523 (providing that an action for libel, slander or invasion of privacy must be commenced within one year), would bar Bank from resting his defamation and false light invasion of privacy claims on any statements made prior to January 23, 2021, Bank clarified that his common law claims are not based on any of the July 2020 statements.

4

C.S.A. § 8343(a).  More precisely, "[a] complaint for defamation must, on its face, identify specifically what allegedly defamatory statements were made, and to whom they were made." *Moses v. McWilliams*, 549 A.2d 950, 960 (Pa. Super. 1988), *app. denied*, 558 A.2d 532 (Pa. 1989) (alteration in original).  "Failure to do so will subject the complaint to dismissal for lack of publication."  *Id.*; *see also Bush v. Lawrence*, 2019 WL 517812, at *1 (Pa. Super. Feb. 11, 2019) (dismissing complaint where plaintiff "fail[ed] to explain precisely what statements" in the letter at issue were defamatory).

Plaintiff's complaint does not meet this bare minimum requirement.  As the basis for his defamation claim against Oates-Primus, he refers generally to an over-700-word email dated January 27, 2021 from Oates-Primus to a number of colleagues.  For Hoeffel, the claim is based on "numerous written and oral communications" she made to faculty, "including her January 26 and January 29 emails described and quoted above, and statements made to try to get faculty members to sign onto the January 20 email, and her statements at the February 2, 2021 union meeting described above."

He characterizes all of these communications as "containing statements, innuendo, and implications to refer to, and defame, Professor Bank," and maintains that they:

> [F]alsely and maliciously and willfully accused Professor Bank of, as described above, racist, mentally unfit and unhinged, dangerous, harmful, threatening, criminal, dishonest, and unprofessional acts and conduct that would adversely affect his fitness for the proper conduct of his business, trade, and profession, namely, serving as a college professor and in particular serving as a professor at CCP, a diverse community college.

But he does not identify exactly what portions of these communications constitute the alleged defamation.  Though various parts of the Complaint contains select excerpts from each, it is not clear whether these excerpts are associated with Bank's defamation claims or are instead quoted in support of his statutory claims.

5

It is not enough that Bank include, as he does, his interpretation of what he takes the import of the communications to be—he must identify the specific statements in each email that he maintains are defamatory. *Moses*, 549 A.2d at 960. Without this information, it is impossible to analyze his claim. Therefore, Bank's defamation claims will be dismissed without prejudice.

### ii.   *False Light Invasion of Privacy*

Bank's false light invasion of privacy claims against Oates-Primus and Hoeffel are based on the same facts as his defamation claims. "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Coleman v. Ogden Newspapers, Inc.*, 142 A.3d 898, 905 (Pa. Super. 2016) (quoting Restatement (Second) of Torts § 652E).

Defendants do not analyze Bank's false light invasion of privacy claims separately, instead asserting, in a footnote, that "Pennsylvania courts apply the same analysis to both defamation and false light claims." This is not always true. Indeed, liability for a false light invasion of privacy may lie *even if there is no defamation*. *Krajewski v. Gusoff*, 53 A.3d 793, 806 (Pa. Super. 2012) ("It is not [] necessary to the action for invasion of privacy that the plaintiff be defamed." (citing Restatement (Second) Torts § 652E cmt. b)). Furthermore, the elements for each cause of action are different. *Compare Joseph v. Scranton Times L.P.*, 129 A.3d 404, 424 (Pa. 2015) (setting out the elements of a defamation claim (quoting 42 Pa. C.S. § 8343(a)) *with Coleman*, 142 A.3d at 905 (setting out elements of false light invasion of privacy claim).

As Defendants have not squarely addressed Plaintiff's false light invasion of privacy claims, they will not be dismissed. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing . . . but not squarely argued, are considered waived.").

### B. Statutory Claims

Bank's statutory claims are based not only on the events of January 2021, but on what occurred the summer before. Before diving into the analysis, it is necessary to clarify what those claims are. As noted above, the Complaint alleges multiple counts of discrimination and retaliation under various statutes. Defendants moved to dismiss all of these claims. In opposition to Defendants' Motion, Bank does not defend his discrimination claims, and has therefore abandoned them. *Levy-Tatum v. Navient Sols., Inc.*, 183 F.Supp.3d 701, 712 (E.D. Pa. 2016) (dismissing with prejudice claims which plaintiff did not address in opposition to motion to dismiss).[4]

#### i. Hostile Work Environment

Bank's hostile work environment claims are based on race, sex, and disability. While not entirely clear he appears to be bringing these claims under Title VII, the ADA, the PHRA, and Section 1981[5] which claims shall be analyzed together in that they share the same elements: (1)

---

[4] Because Bank's discrimination claims will be dismissed with prejudice, his claims against Zellers and Lawrence for aiding and abetting discrimination under the PHRA will also be dismissed with prejudice. *See Kaniuka v. Good Shepherd Home*, 2006 WL 2380387, at *10 (E.D. Pa. Aug. 15, 2006); *Eldeeb v. AlliedBarton Sec. Servs., LLC*, 2008 WL 4083540, at *11-12 (E.D. Pa. Aug. 28, 2008).

[5] Defendants argue that the Court should not recognize Bank's hostile work environment claims because they are not explicitly asserted under any count of the Complaint. It is true that the formal counts of the Complaint allege only discrimination, retaliation, defamation, and false light invasion of privacy. But the Federal Rules of Civil Procedure do not dictate where in the Complaint a claim may be asserted. All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "No technical form is required," Fed. R. Civ. P. 8(d)(1), although parties are instructed to state their claims in numbered paragraphs and to state

that plaintiff suffered intentional discrimination because of his protected status; (2) that the discrimination was severe or pervasive; (3) that the discrimination detrimentally affected the plaintiff; (4) that the discrimination would detrimentally affect a reasonable person in like circumstances; and, (5) the existence of *respondeat superior* liability.  *See Castleberry v. STI Grp.*, 863 F.3d 259, 262 (3d Cir. 2017) (stating elements of a hostile work environment claim under Section 1981); *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (same under Title VII); *Infinity Broad. Corp. v. Pa. Hum. Rels. Comm'n*, 893 A.2d 151, 158 (Pa. Commw. 2006) (same under the PHRA); *Walton v. Mental Health Ass'n of Southeastern Pa.*, 168 F.3d 661, 667 (3d Cir.1999) (applying Title VII hostile work environment test to ADA harassment claim).  Bank's claims stumble on the first two elements because the Complaint does not contain factual allegations that *plausibly* show severe or pervasive, intentional discrimination because of his race, sex, or disability.  *Iqbal*, 556 U.S. at 678.

Bank's race-based hostile work environment claims must be dismissed because he has not shown intentional discrimination based on his race.  "Title VII proscribes racial discrimination in private employment against whites on the same terms as racial discrimination

---

"each claim founded on a separate transaction or occurrence . . . in a separate count," if to do so "would promote clarity."  Fed. R. Civ. P. 10(b).

This Complaint did not have regard to clarity in asserting the hostile work environment claim, but it does refer or allude to an alleged hostile work environment several times.  Bank characterizes the faculty's response to his announcement of the investigation results as "hostile" and alleges that he "reported the hostile work environment" to CCP officials on January 29, but that they did not use their "supervisory power to prevent further hostility toward him."  The Complaint avers that Bank's attorney wrote to CCP's outside counsel, to Zellers, and to Lawrence, and asked them to "stop the discriminatory harassment and hostility and bullying," but that they did nothing.  It contends that Hoeffel "foment[ed] further hostility" against him, for which he reported her to the ODE.  CCP's failure to investigate his complaints, Bank alleges, "was retaliation for his various protected activities of complaining about the hostile work environment."

"Pleadings must be construed so as to do justice."  Fed. R. Civ. P. 8(e).  Here, the allegations in the Complaint make the hostile work environment claim sufficiently discernible that Defendants were on notice of them.  Furthermore, Defendants responded to the hostile work environment claims in their reply brief.  Considering them will therefore wreak no prejudice on Defendants and will serve the interest of judicial economy.

against nonwhites." *Iadimarco v. Runyon*, 190 F.3d 151, 157 (3d Cir. 1999) (cleaned up) (quoting *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 278-79 (1976)). Such claims are called reverse-discrimination claims. *Id.* In the Third Circuit, absent direct evidence of discrimination, a reverse-discrimination plaintiff must show that the defendant treated him or her less favorably than others because of a trait that is protected under Title VII. *Id.* at 163. Therefore, for his race-based hostile work environment claim to survive this stage of the proceedings, Bank must allege facts sufficient to allow the reasonable inference that Defendants treated him less favorably because of his race. *Iqbal*, 556 U.S. at 678.

Bank argues that he has shown intentional race-based discrimination because his offer to fund a scholarship was rejected "on the grounds of microaggressions or macroaggressions," and such grounds would not have been asserted against a black person because "for conduct to be considered as such it must be perpetrated by someone from a 'dominant' racial group against someone from a less powerful group," because "[m]icro and macroaggressions are, by definition, a *racist* or *sexist* or otherwise discriminatory act." On this basis alone, Bank argues that it would be a reasonable inference to conclude that the advisory board "found acts committed by Professor Bank offensive and racist because Professor Bank is white."

These allegations are reminiscent of those rejected by the Middle District of Pennsylvania in *Ledda v. St. John Neumann Reg'l Acad.*, 2021 WL 1035106 (M.D. Pa. Feb. 18, 2021), *report and recommendation adopted,* 2021 WL 1017370 (M.D. Pa. Mar. 17, 2021). There, the plaintiff argued that he had been terminated because the defendants "formed a belief that [he] harbored racial animus toward persons of color." *Ledda*, 2021 WL 1035106 at *2. Magistrate Judge Martin C. Carlson persuasively explained that "conflating race and racism is a false equivalence," because "[r]acism is a state of mind or a belief, whereas race is a state of being."

*Id.* at \*5-6. The Third Circuit has signaled its agreement with this reasoning, albeit in an unpublished opinion. *See DeCarolis v. Presbyterian Med. Ctr. of Univ. of Pa. Health Sys.*, 554 F. App'x 100, 104 (3d Cir. 2014) (affirming district court decision that conduct based on a perception that the plaintiff was "racially insensitive or racist" did not "demonstrate that discrimination against white people was more likely than not the motivating factor in the decision to terminate the plaintiff"). And other courts in this district have adopted the same reasoning. *See Lacontora v. Geno Enterps., LLC*, 2022 WL 856076, at \*4 (E.D. Pa. Mar. 23, 2022) (granting motion to dismiss because termination for allegedly racist remark was not based on race (citing *Ledda*, 2021 WL 1035106)); *Alers v. City of Phila.*, 919 F. Supp.2d 528, 557 n.11 (E.D. Pa. 2013) (to claim that a false accusation of "being a racist is itself a form of racial discrimination" is "at best unintelligible and at worst preposterous"). Indeed, to hold that Title VII shields employees from being perceived as racist or from being accused of racist conduct would "turn Title VII on its head" and impede employers in the critical work of combatting racism in the workplace. *Ledda*, 2021 WL 1035106 at \*7.

The Complaint—after legal conclusions are disregarded—does not allege that Bank's colleagues expressed anger towards him because he is white; rather, the factual allegations in the Complaint show that their anger was tied to their disapproval of his conduct, which they perceived as "harassment," and a refusal to "engage in a restorative process" or to "make amends" for "harm" he had purportedly caused to his black colleagues. Bank interpreted their comments as "falsely portraying [him] as a racist who threatened physical violence against Black colleagues."[6] Being falsely perceived as racist is not a protected characteristic under our anti-

---

[6] The record does not support his assertion that the emails accused him of physical violence; read in context, the "threats" of which he is accused is threatening Oates-Primus and McCool with legal action.

discrimination laws and therefore Bank's race-based hostile work environment claim will be dismissed without prejudice.[7]

### ii. *Retaliation*

Bank asserts retaliation claims against CCP, Zellers, and Lawrence, based on sex, disability, and race. A retaliation claim has three elements: "(1) [the plaintiff] engaged in a protected activity under [the applicable statute]; (2) the employer took an adverse action against her; and (3) there was a causal connection between the employee's participation in the protected activity and the adverse employment action." *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 320 (3d Cir. 2008).[8] To engage in protected activity, the employee must identify what illegal employment practice is being opposed, by either implicitly or explicitly alleging that a protected characteristic was the basis for the adverse employment action. *Curay–Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006). Furthermore, the employee must allege facts supporting a reasonable inference that he had a reasonable, good faith belief that the practice he was opposing constituted unlawful discrimination. *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006).

The Complaint alleges that Bank complained about the way his colleagues were treating him five times. In July 2020, he complained to CCP about "race-based emails" from Oates-

---

[7] Bank's sex- and disability-based hostile work environment claims will also be dismissed without prejudice. The Complaint is completely devoid of any allegations of hostility related to gender. And the disability-based hostile work environment claim appears to hang solely on Oates-Primus's rhetorical questions: "Are you OK? Are you experiencing memory loss? Is that why you went on medical leave?" While this barb may have pained Bank, it is but one instance of hostility, and not severe enough to support a hostile work environment claim on its own. *Castleberry*, 863 F.3d at 264 ("[I]solated incidents (unless extremely serious) will not amount to [harassment]." (second alteration in original) (quoting *Jensen v. Potter*, 435 F.3d 444, 449 n.3 (3d Cir. 2006))).

[8] Title VII, Section 1981, the ADA, and the PHRA, all have the same elements for retaliation claims. *See Wilkerson*, 522 F.3d at 322 (equating Title VII and the PHRA); *Castleberry.*, 863 F.3d at 267 (setting out elements of retaliation under Section 1981); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (analyzing ADA retaliation claims under Title VII framework).

Primus, McCool, and Hoeffel, in the wake of Oates-Primus's rejection of his offer to fund a new scholarship. On January 29, 2021, he reported the "hostile work environment" allegedly created by his colleagues' responses to his publication of the investigation results. On February 1 and 2, he complained to CCP's outside counsel, Zellers, and Lawrence, and asked them "to stop the discriminatory harassment and hostility and bullying." And on February 4, he complained to ODE that Hoeffel was "fueling hostility against him."

Because being perceived as racist is not a protected trait under the anti-discrimination laws, Bank cannot show that he had a good faith belief that his complaints were in opposition to race-based discrimination or hostile work environment. *See Ledda*, 2021 WL 1035106 at *7; *Lovelace v. Wash. Univ. Sch. Of Med.*, 931 F.3d 698, 708 (8th Cir. 2019) (plaintiff accused of racist behavior had no "reasonable good faith belief that the conduct she opposed had constituted racial discrimination in violation of" state anti-discrimination law).[9] Accordingly, Bank's retaliation claims will be dismissed without prejudice.[10]

An appropriate order follows.

                                                     **BY THE COURT:**

                                                     /s/Wendy Beetlestone, J.

                                                   **WENDY BEETLESTONE, J.**

---

[9] Furthermore, as the Complaint does not allege that his complaints identified, either implicitly or explicitly, that sex or disability formed the basis for any hostility he was experiencing, *Curay–Cramer*, 450 F.3d at 135, Bank has not stated a claim for sex- or disability-based retaliation.

[10] As all the claims against CCP have been dismissed, the Court need not address Defendants' arguments in favor of striking Bank's demand for punitive damages against CCP. Additionally, as Bank's retaliation claims will be dismissed without prejudice, his claims against Zellers and Lawrence for aiding and abetting retaliation under the PHRA will also be dismissed without prejudice. *See Kaniuka*, 2006 WL 2380387, at *10; *Eldeeb*, 2008 WL 4083540, at *11-12.